## HARRISON *v.* GEORGIA RAILWAY & ELECTRIC CO.

Under the facts of this case the court erred in granting a nonsuit.

JULY 13, 1910.

Action for damages. Before Judge Pendleton. Fulton superior court. June 10, 1909.

*J. D. Kilpatrick* and *Clinton P. Thompson,* for plaintiff.

*Rosser & Brandon* and *Colquitt & Conyers,* for defendant.

EVANS, P. J. Mrs. Ledosia V. Harrison was killed by the running of a car of the defendant company as she was passing over the track at a street crossing in an attempt to reach the usual point where the street railroad company took on and let off passengers. Her husband and children sued the company to recover damages for her alleged wrongful death. After the plaintiffs had submitted their evidence the case was nonsuited, and they excepted.

The scene of the catastrophe was at a point where the defendant's South Decatur line crosses Pine street. The street east of Pine is called Willow, and the car track from Willow to Pine does not run along any street. Between these streets the track is straight and down grade. It is the custom of the defendant company to stop its cars at Pine street, for taking on passengers for Atlanta, only when signaled. The proper place for a person to signal the car to stop, and the place where intending passengers are taken on board, is the north side of the track. The deceased resided on Pine street, 125 yards south of the car tracks. On the

morning of July 5, 1907, in the company of her son, she left her home for the purpose of boarding the car bound for Atlanta; and while crossing the car track in her effort to reach the usual place for boarding the car, she was struck and killed by the car. At the trial two witnesses testified that they witnessed the fatal injury,— the son of the deceased and a passenger upon the car. According to the son's version of the occurrence, he and his mother left their home and were proceeding up Pine street, when he observed the car just beyond Willow street; at that time he and his mother were about twenty yards from the car tracks. The South Decatur line is double-tracked. He observed the car, and estimated (on the trial) that it was running at about the same speed at which it was running at the time it struck his mother, twenty-five miles per hour. He ran across the track in advance of the rapidly approaching car, passing over the track as the car was about sixty yards away; and as he crossed the track he waved his hand in signal just as the car passed. His mother was following him and he saw her just as he waved at the car; she was then north of the south track —in between the tracks, and was struck just as she stepped over the first rail of the north track. The passenger testified that he was on the front seat of the car, and he noticed that the motorman in approaching Pine street "had what we call the power on full," and did not check the speed of his car. He saw the deceased and her son when the car was between 200 and 300 feet from the crossing, and they were about fifty feet from the track. They were running, and when the car was from 100 to 200 feet from the crossing, and the deceased was in about fifteen feet of the tracks, he thrice exclaimed in a loud tone, "Stop this car." The son had crossed the track when he called to the motorman to stop the car. He did not know that the motorman heard him. The deceased was wearing an old-fashioned sun-bonnet, and the witness did not see her look toward the car as it approached the crossing.

The evidence was sufficient to authorize an inference of negligence on the part of the defendant's agent. The next question is whether the deceased was so clearly guilty of a want of ordinary care, by the exercise of which she could have avoided the injury, as to authorize a nonsuit. The injury was done by an electric car running through the streets and suburbs of Atlanta. Such a car stops at numerous points, at short intervals apart, to take on pas-

sengers. It is not altogether like a train, propelled by steam, which only stops at certain stations. From the nature of the business, and the frequency of the stops, and from the fact that its purpose is to transport passengers in densely populated communities, electric street-cars are equipped so as to stop readily to meet the requirements of the character of the business in which they are engaged. The place of the injury was a crossing of a street or a public road. It was a custom to stop when signaled. The son of the deceased ran towards the place where it was usual to board the car, closely followed by his mother. He ran across the track to the side where it was customary to give the signal to stop the car for the purpose of boarding it. The mother was following the son, and was wearing a sun-bonnet. It does not appear that she actually saw the rapidly approaching car. At one point in the son's testimony he said he saw the car when he crossed the track, and it was about sixty yards distant; other evidence indicated that it might have been even further. After crossing the track he at once signaled for the car to stop, but it did not do so. It passed directly after he gave the signal, and just as the deceased stepped on the track it struck her. Considering the character of the car, the fact that the son and his mother could have been seen approaching the track, that he got across and gave a signal for the car to stop, and that she was wearing a sun-bonnet, which might have to some extent interfered with her seeing the near approach or speed of the car, we think it should have been left for the jury to say whether she was so wanting in the use of ordinary care in stepping on the track, or in not stopping, rather than to have determined it as a matter of law. Whether she thought the car could and would be stopped in obedience to her son's signal before reaching the place where she attempted to cross, and, if so, whether she was wanting in ordinary care, or whether she merely attempted to outrun the car and knowingly sought to cross directly in front of it, and thereby was guilty of a want of ordinary care, would better be left to the determination of the jury under the evidence.

*Judgment reversed. All the Justices concur.*